# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ASTOL ARROYO (K54449), | |
| Petitioner, | Case No. 16-cv-11484 |
| v. | |
| JOHN VARGA, Warden, Dixon Correctional Center, | Judge John Robert Blakey |
| Respondent. | |

## MEMORANDUM OPINION AND ORDER

Petitioner Astol Arroyo brings a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging his conviction in the Circuit Court of Cook County. In 1997, Petitioner was convicted of three counts of armed violence and one count of conspiracy to commit first-degree murder in connection with gang-related violence. Petitioner was sentenced to three consecutive 16-year terms for the armed violence charges, as well as a concurrent seven-year term for the conspiracy charge. Petitioner is classified as a Class X felon. Petitioner remains incarcerated at the Dixon Correctional Center in Dixon, Illinois, where he is in the custody of Respondent John Varga, the facility's warden.

For the following reasons, the Court denies the Petition, and declines to grant a certificate of appealability.

I.     Background

The facts and procedural posture summarized below are drawn from the state court record. This Court presumes that the state court's factual determinations are correct for the purpose of habeas review, as Petitioner neither contests them nor points to any clear and convincing evidence to the contrary. *See* § 2254(e)(1); *Kidd v. Lemke*, 734 F.3d 696, 703 (7th Cir. 2013).

A.     **State Court Proceedings**

Following Petitioner's 1997 conviction by the Cook County Circuit Court, he appealed. [16-1] at 1. The Illinois Appellate Court affirmed the lower court's ruling, *id.* at 15, and the Illinois Supreme Court denied leave to appeal. [16-2] at 3. The claims raised on direct appeal are not relevant to Petitioner's habeas petition.

Petitioner's first petition for post-conviction relief was dismissed as untimely. *Id.* Although that petition was untimely, the Illinois Appellate Court granted a resentencing hearing based upon the Illinois Supreme Court's decision in *People v. Cervantes*, 723 N.E.2d 265 (Ill. 1999). *Id.* In November 2005, Petitioner was resentenced to three consecutive 16-year terms for the armed violence convictions, as well as a concurrent term of seven years for his conviction for conspiracy to commit first-degree murder. *Id.* The resentencing resulted in Petitioner receiving a total of 48 years in custody. [16-25] at 255. As of the date of resentencing, Petitioner had served 3,478 days that the trial court credited toward the new sentence. *Id.* at 256.

Petitioner then filed two successive petitions for post-conviction relief with the Cook County Circuit Court and the Illinois Appellate Court; both were denied. [16-2] at 13; [16-3] at 2. The claims in those post-conviction relief petitions are not relevant to Petitioner's habeas petition.

B. **Request for Good Conduct Credit**

In July 2013, Petitioner filed a petition for a writ of mandamus with the Cook County Circuit Court to compel the Director of the Illinois Department of Corrections (DOC Director) to grant him good conduct credit, pursuant to 730 ILCS § 5/3-6-3(a). [16-31] at 30. The claims before this Court arise from that petition.

Good conduct credit reduces an inmate's sentence. *See* § 5/3-6-3(a). Granting good conduct credit is discretionary for the DOC Director, as governed by section 5/3-6-3(a). Activities that may earn good conduct credit include, among other things, participating in educational, vocational, and correctional industry programs. *Id*.

Several classes of offenders, however, remain ineligible to receive good conduct credit, including Class X felons. *Id*. A Class X felon is a person over the age of 21 who is convicted of a Class 1 or Class 2 felony after having twice been convicted of an offense equivalent to a Class 2 or greater felony in Illinois, when the charges are brought and tried separately and arise from different acts. 730 ILCS § 5/5-4.5-95. Petitioner was convicted as a Class X felon. Despite his classification, Petitioner requested good conduct credit from DOC in 2011. [16-31] at 37–40. The DOC Director denied Petitioner's request because Petitioner, as a Class X felon, is ineligible for good conduct credit under Illinois law. *Id*. at 37–38.

3

Petitioner argues that a plain reading of section 5/3-6-3 required the DOC Director to grant him 55 months of good conduct credit for completing two correctional industry assignments, a vocational assignment, and his GED. *Id.* at 33. Alternately, Petitioner argues that he is entitled to the good conduct credit because section 5/3-6-3 is ambiguous. [16-31] at 32–33. The Cook County Circuit Court denied the mandamus petition, finding Petitioner ineligible for good conduct credit under section 5/3-6-3, because of his status as a Class X felon. [16-4] at 1.

Petitioner appealed, again arguing that either a plain reading of the statute or the statute's ambiguity required granting him good conduct credit. [16-31] at 52. During this appeal, the Public Defender moved to withdraw as counsel, arguing that the mandamus petition did not contain a meritorious issue. [16-7] at 1. The Public Defender argued that, although Petitioner cited from the 2011 version of the Illinois code, the 1997 version applied because Petitioner was convicted and sentenced in 1997. *Id.* at 7. Also, the Public Defender argued that Class X felons are plainly excluded from eligibility for good conduct credit under Illinois law. *Id.* The Illinois Appellate Court granted the motion to withdraw and denied Petitioner's appeal in February 2015. [16-24] at 172.

Petitioner then filed a petition for leave to appeal (PLA) with the Illinois Supreme Court in September 2015, claiming that the ambiguity in section 5/3-6-3(a)(4) obligated the DOC Director to grant him good conduct credit. [16-9] at 7–9. Petitioner did not cite to any federal authority or explicitly allege a violation of his

4

due process rights in the PLA. [16-9]. The Illinois Supreme Court denied the PLA in November 2015. [16-5].

Finally, Petitioner filed a habeas petition with this Court. [16-1]. Petitioner maintains that the statute's language is ambiguous and so must be construed in his favor. *Id.* Petitioner claims that he is entitled to 55 months of good conduct credit for, among other things, attending educational programs for business management and data processing, and earning his GED. *Id.* For the *first* time, Petitioner also argues that denying him good conduct credit violated his Fourteenth Amendment Due Process Rights. *Id.* at 7–8.

## II. Legal Standard

Federal review of state-court decisions under § 2254 is limited. If a state court decided an issue on the merits, habeas relief can be granted only if the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law," or "was based on an unreasonable determination of the facts in light of the evidence presented" to the state court." § 2254(d)(1)-(2); *Harrington v. Richter*, 562 U.S. 86, 100 (2011). This Court presumes the correctness of the state court's account of the facts, and Petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." § 2254(e)(1); *see also Coleman v. Hardy*, 690 F.3d 811, 815 (7th Cir. 2012).

Several procedural doctrines also constrain this Court's power to reach the merits of a habeas petition. Under section 2254(b)(1)(A), a federal court may not grant habeas relief "unless it appears that the applicant has exhausted the

5

remedies available in the courts of the State." In other words, a habeas petitioner "who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim." *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004).

Furthermore, under section 2254's exhaustion requirement, a petitioner must "fairly present" the federal issues of his claim in state court. *Picard v. Connor,* 404 U.S. 270, 275 (1971). For a claim to be "fairly presented," the petitioner must present "both the operative facts and the legal principles" to every level of the state court system, giving each court a meaningful opportunity to consider the substance of the claim. *See Bintz v. Bertrand*, 403 F.3d 859, 863 (7th Cir. 2005); *see also Lewis*, 390 F.3d at 1025–26. To avoid procedural default, therefore, Petitioner must have fairly presented his claims to the Cook County Circuit Court, the Illinois Appellate Court, and the Illinois Supreme Court. *Castille v. Peoples*, 489 U.S. 346, 349 (1989).

The Seventh Circuit has articulated four factors—the waiver analysis—to determine whether a claim was fairly presented to state courts. These factors examine the extent to which a petitioner: (1) relied upon federal cases that engage in constitutional analysis; (2) relied upon state cases that engage in constitutional analysis on similar facts; (3) framed the claim in terms so particular as to call to mind a specific constitutional right; and (4) alleged "a pattern of facts that is well within the mainstream of constitutional litigation." *United States ex rel. Sullivan v. Fairman*, 731 F.2d 450, 454 (7th Cir. 1984). But the presence or absence of any one of these factors is not dispositive; the issue of notice is fact-specific. *Id.* The "bottom

line" is that "the task of the habeas court in adjudicating any issue of fair presentment is assessing, in concrete, practical terms, whether the state court was sufficiently alerted to the federal constitutional nature of the issue to permit it to resolve that issue on a federal basis." *Ellsworth v. Levenhagen*, 248 F.3d 634, 639 (7th Cir. 2001) (internal quotation marks omitted).

### III. Analysis

#### A. Procedural Default

Based upon the record here, Petitioner failed to directly raise his due process claim before any Illinois state courts; he alleged a due process violation for the first time in his habeas petition to this Court. Thus, to survive procedural default, Petitioner must have "fairly presented" his due process claim to the Illinois state courts under the Seventh Circuit's waiver analysis. For the reasons stated below, the Court finds that Petitioner did not fairly present his due process claim to the Illinois state courts and thus the claim is procedurally defaulted.

Petitioner's claim plainly fails to meet the first, second, and fourth prongs of the "fair presentment" standard. First, Petitioner did not rely upon any federal constitutional cases in his mandamus petition and subsequent appeals; only in the habeas petition did Petitioner present a due process claim.

Second, Petitioner did not rely upon any state cases applying a federal constitutional analysis. Petitioner claims that he consistently cited to the Illinois Appellate Court's decision in *People v. Mata*, 737 N.E.2d 1120 (Ill. App. Ct. 2000),

7

throughout his state briefs. Petitioner is factually correct, but *Mata* does not rely upon federal constitutional arguments; *Mata* cites only to Illinois state cases. *Id.*

As for the fourth prong of the waiver analysis, Petitioner did not allege "a pattern of facts that is well within the mainstream of constitutional litigation." *Fairman*, 731 F.2d at 454. An indirect due process claim has a constitutional dimension if it is "well within the mainstream of due process adjudication," such that the court was "fairly alerted to its constitutional nature." *Verdin v. O'Leary*, 972 F.2d 1467, 1475 (7th Cir. 1992) (internal quotation marks omitted). This "mainstream" approach, however, rescues an otherwise defaulted claim "in only the most obvious case," given that a petitioner must present "*both* factual content and federal legal theory" to the state courts. *Id.*

Petitioner's claims here fail to raise a pattern of facts that fall well within the mainstream of constitutional litigation. Of course, disputes about the constitutionality of criminal statutes are not uncommon. But accepting Petitioner's argument that labeling a state statute "ambiguous" is enough to present a constitutional claim would open the floodgates for federal habeas petitions for any prisoner dissatisfied with a state court's statutory interpretation. Such a result remains inconsistent with the principle of comity and the respect that federal courts owe to their state counterparts. *See, e.g.*, *Engle v. Isaac*, 456 U.S. 107, 133 (1982) ("Federal habeas challenges to state convictions . . . entail greater finality problems and special comity concerns."). Because Petitioner does not assert a pattern of facts

that is well within the mainstream of constitutional litigation, he has not satisfied the fourth prong of the waiver analysis.

To be sure, the third prong of the waiver analysis—whether Petitioner framed the claim in terms so particular as to call to mind a specific constitutional right—is a closer call. During his state proceedings, Petitioner consistently raised arguments about the plain meaning and alleged ambiguity of section 5/3-6/3(a). The Seventh Circuit, however, has recognized that the "principal interpretive hazard inherent in the waiver analysis" concerns specificity, especially for due process claims, which can be "particularly indistinct." *Kurzawa v. Jordan*, 146 F.3d 435, 443 (7th Cir. 1998). A few specific dangers may arise: (1) a claim in state court may "present the echo of a federal claim" without alerting the state court to the federal nature of the claim; or (2) a federal constitutional claim may be inherent in the facts but unrecognizable without further elaboration. *Verdin*, 972 F.2d at 1475 (internal quotation marks omitted).

For example, the court in *Johnson v. Pfister* held that a petitioner's claim that a trial judge erred by denying his proposed jury instructions was insufficient to call to mind a specific constitutional right when the brief only made passing reference to "due process" and focused mainly on Illinois state law. No. 15-cv-6078, 2017 WL 1862641, at *16 (N.D. Ill. May 9, 2017). *Johnson* relies largely upon the Seventh Circuit's decision in *McDowell v. Lemke*, which explains that a federal constitutional claim must be "framed so it could stand on its own" or must be

9

"supported by very substantial analysis throughout the petition." 737 F.3d 476, 482 (7th Cir. 2013) (internal quotation marks omitted).

Here, although Petitioner alleged that the statute was ambiguous, he did not make even a passing remark in his state filings linking the ambiguity to a due process violation or unconstitutional vagueness. Similarly, in *McDowell*, the petitioner "did not reference either the Illinois or federal constitutions" or "cite any cases"; and the Seventh Circuit held that he had not fairly presented a due process claim. *Id.* at 482. Like the petitioner in McDowell, Petitioner based his complaint solely upon the Illinois state courts' interpretation of Illinois law. This Court construes *pro se* petitions liberally, *Id.* (citing *Ward v. Jenkins*, 613 F.3d 692, 697 (7th Cir. 2010)), but a petitioner must go beyond "the due process label to a more meaningful level of specificity." *Chambers v. McCaughtry,* 264 F.3d 732, 739 (7th Cir. 2001).

Here, Petitioner did not even use the words "due process" in his original petition; he argued solely about the state courts' interpretation of section 5/3-6-3(a). [16-31] at 31–33. During briefing on the Public Defender's petition to withdraw, Petitioner again did not hint at a due process claim. [16-8]. Also, the Cook County Circuit Court's order contained no constitutional analysis. [16-31]. Likewise, the Illinois Appellate Court's summary order denying Petitioner's appeal did not discuss any federal due process or constitutional concerns. [16-4]. As the Seventh Circuit discussed in *Kurzawa*, it is unlikely that a state high court would have omitted discussion of federal issues if they had been advanced before the Court. 146

F.3d at 442. Here too, it is unlikely that each state court would have failed to address a federal due process claim had the courts been alerted to the claim.

Because all of Petitioner's filings relied upon Illinois precedent and never mentioned or alluded to a federal due process claim until he petitioned this Court for relief, the due process claim was not framed in terms so particular as to call to mind a specific constitutional right. *See Verdin*, 972 F.2d at 1476 (holding that, in resolving a question of fair presentment, "the habeas court must determine whether, as a *pragmatic* matter, it is probable that the state tribunal was alerted to the federal quality of the claim."). Even though Petitioner might have presented a state claim with the "echo of a federal claim," *id.* at 1475, he failed to properly alert the state court to the federal nature of the claim. As such, Petitioner's Fourteenth Amendment Due Process claim is procedurally defaulted.

**B. Merits**

Even if Petitioner's constitutional claim had been fairly presented to all state courts, it would still be denied on the merits. When a state court determines an issue on the merits, a federal court may grant habeas relief only if the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(1)-(2); *Harrington*, 562 U.S. at 100. The Cook County Circuit Court found Petitioner ineligible for good conduct credit under section 5/3-6-3(a) because he is a Class X felon; the Illinois Appellate Court affirmed that decision, and the Illinois Supreme Court then denied

his PLA. [16-24] at 180–81; [16-5]. Based upon the record here, this Court cannot say that the Illinois courts' decisions were contrary to clearly established federal law or that they were based on an unreasonable determination of the facts in light of the evidence presented to the state courts.

Petitioner claims that the language of the 2011 version of section 5/3-6-3(a)—the version in effect when he requested good conduct credit—is ambiguous. The relevant portion provides that "the good conduct credit accumulated and retained under . . . this Section by *any inmate* during specific periods of time in which such inmate is engaged full-time in substance abuse programs, correctional industry assignments, or educational programs . . . and satisfactorily completes the assigned program as determined by the standards of the Department, shall be multiplied by a factor of 1.25 for program participation before August 11, 1993 and 1.50 for program participation on or after that date." § 5/3-6-3(a)(4) (emphasis added). The statute continues with an extensive list of inmates who are *ineligible* for receiving good conduct credit, including those convicted of a Class X felony. *Id.*

Petitioner argues that the "any inmate" language in section 5/3-6-3(a)(4) entitles him to receive good conduct credit for placement in educational or vocational training. Petitioner also claims that the statute is ambiguous because section 5/3-6-3(a)(2)(iii) allows prisoners convicted of armed violence with a category II weapon—one of Petitioner's convictions—to earn limited good conduct credit, but section 5/3-6-3(a)(4) excludes Class X felons from eligibility for good conduct credit. [1] at 7. Thus, Petitioner argues, the statute is flawed because he may earn good

conduct credit under subsection (a)(2)(iii), but he is simultaneously excluded from earning good conduct credit under subsection (a)(4). *Id.*

Although there is no doubt that the statute's organization is complex, section 5/3-6-3(a) must be read as a whole with "all relevant parts of the statute ... considered." *Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1089 (7th Cir.). If Petitioner had been convicted only of armed violence with a category II weapon and was not a Class X felon, he would be eligible for good conduct credit. But the statute's blanket exclusion for Class X felons overrides other sections permitting good conduct credit for prisoners who committed lesser crimes. It is clear from the final portion of section 5/3-6-3(a)(4), which excludes prisoners who committed "first degree murder, a Class X felony, criminal sexual assault," and a number of other serious offenses from eligibility for good conduct credit, that Class X felons are a distinct category of incarcerated individuals who are ineligible for good conduct credit. Petitioner does not dispute his status as a Class X felon; thus, he is ineligible for discretionary good conduct credit under section 5/3-6-3(a)(4).

Respondent argues that the 1997 version of section 5/3-6-3(a) sets the applicable standard because Petitioner was charged in 1997. Under that version, subsection (a)(4) is even more explicit: "*no inmate* shall be eligible for the additional good conduct credit under this paragraph . . . if convicted of . . . first degree murder, a Class X felony, criminal sexual assault," or a number of other serious offenses. § 5/3-6-3(a)(4) (1996) (emphasis added). Here, the "no inmate" language shows that subsection (a)(4)'s exclusion overrides other subsections that permit prisoners to

13

earn good conduct credit. Quite simply, the plain and unambiguous text of both versions of section 5/3-6-3 renders Petitioner, as a Class X felon, ineligible for good conduct credit. His petition for habeas corpus is denied.

## IV. Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), a "certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." An applicant has made a "substantial showing" when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Resendez v. Knight*, 653 F.3d 445, 446 (7th Cir. 2011) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right or that reasonable jurists would debate the resolution of his claims. Accordingly, the Court declines to issue a certificate of appealability in this case.

## V. Conclusion

For the foregoing reasons, Petitioner's habeas corpus petition [1] is denied. The Court declines to issue a certificate of appealability. The Clerk is instructed to enter a Rule 58 Judgment in favor of Respondent and against Petitioner. Civil case terminated.

Dated: January 2, 2018                  Entered:

_____
John Robert Blakey
United States District Judge